PER CURIAM:
Plaintiffs have appealed the district court’s denial of their motion for a temporary restraining order to require the defendants to transport Theresa Marie Schindler Schiavo to a hospital to reestablish nutrition and hydration and for any medical treatment necessary to sustain her life, and to require the state court judge defendant to rescind his February 25, 2005 order directing removal of nutrition and hydration from Schiavo and to restrain him from issuing any further orders that would discontinue nutrition and hydration.[1] After notice and a hearing, the district court entered a careful order which is attached as an Appendix' to this opinion. Plaintiffs have also petitioned this Court to grant the same injunctive relief under the All Writs Act, 28 U.S.C. § 1651(a).
Although we ordinarily do not have jurisdiction over appeals from orders granting or denying temporary restraining orders, in circumstances such as these,' “when a grant or denial of a TRO might have a serious, perhaps irreparable, consequence, and can be effectually challenged only by immediate appeal, we may exercise appellate jurisdiction.” Ingram v. Ault, 50 F.3d 898, 900 (11th Cir.1995) (internal citations, marks, and ellipsis omitted); see also United States v. Wood, 295 F.2d 772, 778 (5th Cir.1961). In these circumstances we treat temporary restraining orders as equivalent to preliminary injunctions or final judgments, either of which are appealable. See 28 U.S.C. §§ 1291 & 1292(a)(1).
The district court correctly stated the four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted, which are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict *1226 on the non-movant; and (4) that entry of the relief would serve the public interest. See Ingram, 50 F.3d at 900; Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc). Requests for emergency injunctive relief are not uncommon in federal court and sometimes involve decisions affecting life and death. Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion. See Siegel, 234 F.3d at 1176; see also Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 339, 119 S.Ct. 1961, 1978, 144 L.Ed.2d 319 (1999) (“Plaintiffs with questionable claims would not meet the likelihood of success criterion.”).
Applying those factors, the district court determined that the last three weighed in favor of granting the temporary restraining order. The court reasoned that because those three factors were met, plaintiffs only had to show a substantial case on the merits. After analyzing each of plaintiffs’ claims, the district court concluded they had failed to show a substantial case on the merits as to any of the claims.[2]
While the district court conducted de novo review of plaintiffs’ claims, we review the district court’s denial of temporary injunctive relief only for an abuse of discretion. This scope of review will lead to reversal only if the district court applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir.2004); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir.2001). Short of that, an abuse of discretion standard recognizes there is a range of choice within which we will not reverse the district court even if we might have reached a different decision. See McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir.2001); Rasbury v. Internal Revenue Serv. (In re Rasbury), 24 F.3d 159, 168-69 (11th Cir.1994).[3]
For the reasons explained in the district court’s opinion, we agree that the plaintiffs have failed to demonstrate a substantial case on the merits of any of their claims. We also conclude that the district court’s carefully thought-out decision to deny temporary relief in these circumstances is not an abuse of discretion.[4]
 The principal theme of plaintiffs’ argument against the district court’s denial of a temporary restraining order is that Pub. L. No. 109-3, which Congress enacted to enable them to bring this lawsuit, mandates that injunctive relief be granted to enable them to have a full trial on the merits of their claims. Pub. L. No. 109-3 is an extraordinary piece of legislation, and it does many things. Defendants contend *1227 that the legislation is so extraordinary that it is unconstitutional in several respects. We need not decide that question. For purposes of determining whether temporary or preliminary injunctive relief is appropriate, we indulge the usual presumption that congressional enactments are constitutional. United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000); Benning v. Georgia, 391 F.3d 1299, 1303 (11th Cir.2004). It is enough for present purposes that in enacting Pub.L. No. 109-3 Congress did not alter for purposes of this case the longstanding general law governing whether temporary restraining orders or preliminary injunctions should be issued by federal courts.
There is no provision in Pub. L. No. 109-3 addressing whether or under what conditions the district court should grant temporary or preliminary relief in this case. There is no more reason in the text of the Act to read in any special rule about temporary or preliminary relief than there would be to read in a special rule about deciding the case before trial on Fed. R.Civ.P. 12(b)(6) or summary judgment grounds. Not only that, but Congress considered and specifically rejected provisions that would have mandated, or permitted with favorable implications, the grant of the pretrial stay. There is this enlightening exchange in the legislative history concerning the Senate bill that was enacted:
Mr. LEVIN. Mr. President, I rise to seek clarification from the majority leader about one aspect of this bill, the issue of whether Congress has mandated that a Federal court issue a stay pending determination of the case.
Mr. FRIST. I would be pleased to help clarify this issue.
Mr. LEVIN. Section 5 of the original version of the Martinez bill conferred jurisdiction on a Federal court to hear a case like this, and then stated that the Federal court “shall” issue a stay of State court proceedings pending determination of the Federal case. I was opposed to that provision because I believe Congress should not mandate that a Federal judge issue a stay. Under longstanding law and practice, the decision to issue a stay is a matter of discretion for the Federal judge based on the facts of the case. The majority leader and the other bill sponsors accepted my suggestion that the word “shall” in section 5 be changed to “may.”
The version of the bill we are now considering strikes section 5 altogether. Although nothing in the text of the new bill mandates a stay, the omission of this section, which in the earlier Senate-passed bill made a stay permissive, might be read to mean that Congress intends to mandate a stay. I believe that reading is incorrect. The absence of any state [sic] provision in the new bill simply means that Congress relies on current law. Under current law, a judge may decide whether or not a stay is appropriate.
Does the majority leader share my understanding of the bill?
Mr. FRIST. I share the understanding of the Senator from Michigan, as does the junior Senator from Florida who is the chief sponsor of this bill. Nothing in the current bill or its legislative history mandates a stay. I would assume, however, the Federal court would grant a stay based on the facts of this case because Mrs. Schiavo would need to be alive in order for the court to make its determination. Nevertheless, this bill *1228 does not change current law under which a stay is discretionary.
Mr. LEVIN. In light of that assurance, I do not object to the unanimous consent agreement under which the bill will be considered by the Senate. I do not make the same assumption as the majority leader makes about what a Federal court will do. Because the discretion of the Federal court is left unrestricted in this bill, I will not exercise my right to block its consideration.
151 Cong. Rec. S3099-100 (daily ed. Mar. 20, 2005) (colloquy between Sens. Levin & Frist).
This enlightening exchange does not contradict the plain meaning of Pub. L. No. 109-3, but instead reinforces it. Plainly, Congress knew how to change the law to favor these plaintiffs to the extent that it collectively wished to do so. That is what the changes it did make, including those to standing law, the Rooker-Feldman doctrine, and abstention, demonstrate. When Congress explicitly modifies some pre-existing rules of law applicable to a subject but says nothing about other rules of law, the only reasonable reading is that Congress meant no change in the rules it did not mention. The dissent characterizes the language of the Act as clear. It is on this point: the language of the Act clearly does not purport to change the law concerning issuance of temporary or preliminary relief.[5]
To interpret Pub. L. No. 109-3 as requiring that temporary or preliminary relief be entered regardless of whether it is warranted under pre-existing law would go beyond reading into the Act a provision that is not there. It would require us to read into the Act a provision that Congress deliberately removed in order to clarify that pre-existing law did govern this issue.
Nor do we find convincing plaintiffs’ argument that in reaching its decision to deny the motion for a temporary restraining order the district court violated Pub. L. No. 109-3 by considering the procedural history of extensive state court litigation. The plaintiffs’ complaint and other filings in the district court asserted that they had not been afforded procedural due process by the state courts. Their pleadings and brief in the district court and this Court are replete with citations to and discussion about the state court proceedings and decisions. In deciding whether the plaintiffs had shown a substantial case on the merits of their federal procedural due process claims, the district court had to consider the prior proceedings in state court. There is no way to consider a claim that the state court proceedings violated the Due Process Clause without examining what those proceedings were. In obedience to Pub. L. No. 109-3 the district court considered the federal constitutional claims de novo and made its own independent evaluation of them.
Plaintiffs have also moved this Court under the All Writs Act, 28 U.S.C. § 1651(a), for emergency injunctive relief pending appeal, asking us to order the same temporary or preliminary relief that we have concluded the district court did not abuse its discretion in denying. They are supported in that motion by a State *1229 ment of Interest filed by the United States’ Department of Justice.
The All Writs Act provides: “The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.” Id. The purpose of the power codified in that statute is to allow courts “to protect the jurisdiction they already have, derived from some other source.” Klay, 376 F.3d at 1099. It gives a “residual source of authority to issue writs that are not otherwise covered by statute” and is an “extraordinary remedy that ... is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law.” Id. at 1100 (internal quotes and citations omitted).
Our decisions make clear that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely Fed.R.Civ.P. 65, which provides for temporary restraining orders and preliminary injunctions. See Fla. Med. Ass’n v. U.S. Dep’t of Health, Educ. & Welfare, 601 F.2d 199, 202-03 (5th Cir.1979) (reversing the district court’s grant of injunction under the All Writs Act because “Rule 65 provides sufficient protection for the jurisdiction of the district court”); Klay, 376 F.3d at 1101 n. 13.
In Klay, we explained that the injunction sought in Florida Medical Association was a “textbook” example of a preliminary injunction because “[i]t was issued to preserve the status quo and prevent allegedly irreparable injury until the court had the opportunity to decide whether to issue a permanent injunction.” Klay, 376 F.3d at 1101 n. 13. The injunction being sought by the plaintiffs is another textbook example of an effort to use the All Writs Act in order to circumvent the requirements for preliminary injunctive relief. Granting the injunctive relief would “confer[ ] the same legal rights upon plaintiffs and impose[] the same legal duties upon defendants as would a preliminary injunction.” Fla. Med. Ass’n, 601 F.2d at 202; id. (the All Writs Act “does not authorize a district court to promulgate an ad hoc procedural code”). Under our circuit law, the All Writs Act cannot be used to evade the requirements for preliminary injunctions. Klay, 376 F.3d at 1101 n. 13.
There is no denying the absolute tragedy that has befallen Mrs. Schiavo. As the Florida Second District Court of Appeals has observed, we all have our own family, our own loved ones, and our own children. However, we are called upon to make a collective, objective decision concerning a question of law. In re Guardianship of Schiavo, — So.2d -, 2005 WL 600377, at *4 (Fla. 2d DCA Mar. 16, 2005). In the end, and no matter how much we wish Mrs. Schiavo had never suffered such a horrible accident, we are a nation of laws, and if we are to continue to be so, the preexisting and well-established federal law governing injunctions as well as Pub.L. No. 109-3 must be applied to her case. While the position of our dissenting colleague has emotional appeal, we as judges must decide this case on the law.
AFFIRMED; PETITION FOR IN-JUNCTIVE RELIEF DENIED.[6]
*1230 APPENDIX
THERESA MARIE SCHINDLER SCHIAVO, Incapacitated ex rel., ROBERT SCHINDLER and MARY SCHINDLER, her Parents and Next Friends, Plaintiffs, vs. MICHAEL SCHIAVO, JUDGE GEORGE W. GREER and THE HOSPICE OF THE FLORIDA SUNCOAST, INC., Defendants.
Case No. 8:05-CV-530-T-27TBM
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

2005 U.S. Dist. LEXIS 1265

March 22, 2005, Decided
COUNSEL: [*1] For Theresa Marie Schindler Schiavo, incapacitated ex rel., Robert Schindler and Mary Schindler, her parents and next friends, Plaintiff: David C. Gibbs, III, Gibbs Law Firm, Seminole, FL; George E. Tragos, Law Office of George E. Tragos, Clearwater, FL; Robert A. Destro, Columbus School Of Law, Washington, DC.
For Michael Schiavo, as guardian of the person of Theresa Marie Schindler Schia-vo, incapacitated, Defendant: George J. Felos, Felos & Felos, P.A., Dunedin, FL; Iris Bennett, Jenner & Block LLC, Washington, DC; Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL; Rebecca H. Steele, ACLU Foundation of Florida, Inc., West Central Florida Office, Tampa, FL; Robert M. Portman, Jenner & Block, Washington, DC; Thomas J. Perrelli, Jenner & Block, Washington, DC.
For The Hospice of the Florida Suncoast, Inc., Defendant: Gail Golman Holtzman, Constangy, Brooks & Smith, LLC, Tampa, FL; John W. Campbell, Constangy, Brooks & Smith, LLC, Tampa, FL; Robin G. Midulla, Robin Greiwe Midulla, P.A., Tampa, FL.
For Liberty Counsel, Inc., Amicus: Erik W. Stanley, Liberty Counsel, Longwood, FL.
For United States, Interested Party: Paul I. Perez, [*2] U.S. Attorney’s Office, Middle District of Florida, Orlando, FL; Warren A. Zimmerman, U.S. Attorney’s Office, Middle District of Florida, Tampa, FL.
For Morton Plant Hospital Association, Inc., Victor E. Gambone, M.D., Morton Plant Mease Primary Care, Inc., Stanton P. Tripodis, M.D., Interested Parties: James Addison Martin, Jr., MacFarlane Ferguson & McMullen, Clearwater, FL; Jeffrey W. Gibson, MacFarlane Ferguson & McMullen, Clearwater, FL.
Gordon Wayne Watts, Interested Party, Pro se, Lakeland, FL.
JUDGES: JAMES D. WHITTEMORE, United States District Judge.
OPINION BY: JAMES D. WHITTE-MORE
OPINION:
ORDER
BEFORE THE COURT is Plaintiffs’ Motion for Temporary Restraining Order (Dkt.2). In their motion, Plaintiffs seek an order directing Defendants to Schiavo and Hospice to transport Theresa Schiavo to Morton Plant' Hospital for any necessary medical treatment to sustain her life and to reestablish her nutrition and hydration. This action and Plaintiffs’ motion were filed in response to an order of Pinellas County Probate Judge George W. Greer directing Defendant Schiavo, Theresa Schiavo’s husband and plenary guardian, to discontinue her nutrition and hydration.
The court [*3] conducted a hearing on Plaintiffs’ motion after notice to Defendants. Upon consideration, Plaintiffs’ Motion for Temporary Restraining Order is denied.
*1231 Plaintiffs, the parents of Theresa Marie Schindler Schiavo, brought this action pursuant to a Congressional Act signed into law by the President during the early morning hours of March 21, 2005. nl. The Act, entitled “An Act for the relief of the parents of Theresa Marie Schiavo,” provides that the:
United States District Court for the Middle District of Florida shall have jurisdiction to hear, determine, and render judgment on a suit or claim by or on behalf of Theresa Marie Schiavo for the alleged violation of any right of Theresa Marie Schiavo under the Constitution or laws of the United States relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain life.
nl. Pub. L. No. 109-3 (March 21, 2005).

Jurisdiction and Standing

The federal district courts are courts of limited jurisdiction, “empowered [*4] to hear only those cases ... which have been entrusted to them by a jurisdictional grant authorized by Congress.” University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir.1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir.1994)). The plain language of the Act establishes jurisdiction in this court to determine de novo “any claim of a violation of any right of Theresa Schiavo within the scope of this Act.” The Act' expressly confers standing to Plaintiffs as her parents to bring any such claims. There can be no substantial question, therefore, that Plaintiffs may bring an action against a party to the state court proceedings in this court for claimed constitutional deprivations or violations of federal law occasioned on their daughter relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain her life. Whether the Plaintiffs may bring claims in federal court is not the issue confronting the court today, however. The issue confronting the court is whether temporary injunctive relief is warranted.

Applicable Standards

While there may be substantial issues concerning [*5] the constitutionality of the Act, for purposes of considering temporary injunctive relief, the Act is presumed to be constitutional. Benning v. Georgia, 391 F.3d 1299, 1303 (11th Cir.2004).
The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits. Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). A district court may grant a preliminary injunction only if the moving party shows that:
(1) it has a substantial likelihood of success on the merits;
(2) irreparable injury will be suffered unless the injunction issues;
(3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
(4) if issued, the injunction would not be adverse to the public interest.
Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir.2004); Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir.2001). A preliminary injunction is “an extraordinary [*6] and drastic remedy” and is “not to be granted unless the movant ‘clearly established the burden of persuasion’ as to the four prerequisites.” United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting Canal Auth. of State of Florida, 489 F.2d at 573). n2.
*1232 n2. The Act does not address the traditional requirements for temporary-injunctive relief. Accordingly, these standards control whether temporary in-junctive relief is warranted, notwithstanding Congress’ intent that the federal courts determine de novo the merits of Theresa Schiavo’s claimed constitutional deprivations.
It is apparent that Theresa Schiavo will die unless temporary injunctive relief is granted. This circumstance satisfies the requirement of irreparable injury. Moreover, that threatened injury outweighs any harm the proposed injunction would cause. To the extent Defendants urge that Theresa Schiavo would be harmed by the invasive procedure reinserting the feeding tube, this court finds [*7] that death outweighs any such harm. Finally, the court is satisfied that an injunction would not be adverse to the public interest. Notwithstanding these findings, it is essential that Plaintiffs establish a substantial likelihood of success on the merits, which the court finds they have not done.
The first of the four prerequisites to temporary injunctive relief is generally the most important. Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000). The necessary level or degree of possibility of success on the merits will vary according to the court’s assessment of the other factors. Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981) (citing with auth. Washington Metro. Area Transit Comm’n v. Holiday Tours, Inc., 182 U.S.App. D.C. 220, 559 F.2d 841, 843 (D.C.Cir.1977)).
A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success. Home Oil Company, Inc. v. Sam’s East, Inc., 199 F.Supp.2d 1236, 1249 (M.D.Ala.2002) (emphasis in original); see also Ruiz, 650 F.2d at 565. “Where the ‘balance [*8] of the equities weighs heavily in favor of granting the [injunction],’ the movant need only show a ‘substantial case on the merits.’ ” Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir.1986) (citing Ruiz, 650 F.2d at 565).
This court has carefully considered the Act and is mindful of Congress’ intent that Plaintiffs have an opportunity to litigate any deprivation of Theresa Schiavo’s federal rights. The Court is likewise mindful of Congress’ directive that a de novo determination be made “notwithstanding any prior State court determination.” In resolving Plaintiffs’ Motion for Temporary Restraining Order, however, the court is limited to a consideration of the constitutional and statutory deprivations alleged by Plaintiffs in their Complaint and motion. Because Plaintiffs urge due process violations are premised primarily on the procedures followed and orders entered by Judge Greer in his official capacity as the presiding judge in the dispute between Michael Schiavo and Plaintiffs, their Complaint necessarily requires a consideration of the procedural history of the state court case to determine whether there is a showing of any due process [*9] violations. On the face of these pleadings, Plaintiffs have asserted five constitutional and statutory claims. To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim. n3.
n3. Plaintiffs have submitted affidavits of health care professionals regarding Theresa’s medical status, treatment techniques and therapies which are available and their opinions regarding how and whether these treatments might improve Theresa’s condition. Plaintiffs have not, however, discussed these affidavits in their papers and how they relate to the claimed constitutional deprivations.
*1233 A. Count I — Violation of Fourteenth Amendment Due Process Right to a Fair and Impartial Trial
Plaintiffs allege in Count I that Theresa Schiavo’s Fourteenth Amendment right to a fair and impartial trial was violated, contending that the presiding judge “became Terri’s health care surrogate” and “also purported to act as an impartial trial judge in the same proceeding.” (Dkt. 1, PP 47-48). They [*10] allege that once he “became an advocate for Terri’s death, it became impossible for Judge Greer to maintain his role as an impartial judge in order to review his own decision that Terri would want to die.” (Dkt. 1, P 49). Finally, they allege that “Judge Greer’s dual and simultaneous role as judge and health-care surrogate denied Terri a fair and impartial trial.” (Dkt. 1, P 50). These contentions are without merit.
Florida’s statutory scheme, set forth in Chapter 765, contemplates a process for designation of a proxy in the absence of an executed advance directive and provides for judicial resolution of disputes arising concerning decisions made by the proxy. See Fla. Stat. § 765.401(1). Where a decision by the proxy is challenged by the patient’s other family members, it is appropriate for the parties to seek “expedited judicial intervention.” Fla. Slat. § 765.105. Applying this statutory scheme, the state court appointed Michael Schiavo, Theresa Schiavo’s husband, as plenary guardian and proxy for Theresa. Thereafter, a dispute arose between Michael Schiavo and Plaintiffs concerning whether to continue Theresa on artificial life support, and Judge Greer, the presiding [*11] judge, was called upon to resolve that dispute.
Florida’s statutory scheme contemplates a judicial resolution of these competing contentions. See In re Guardianship of Browning, 568 So.2d 4, 16 (Fla.1990). As the Florida Second District Court of Appeal explained, where two “suitable surrogate decision-maker[s] ... could not agree on the proper decision, ...” the guardian may invoke “the trial court’s jurisdiction to allow the trial court to serve as the surrogate decision-maker.” In re Guardianship of Schiavo, 780 So.2d 176, 178 (Fla.Dist.Ct.App.2001) (“Schiavo 7”). Pursuant to Florida law, therefore, Judge Greer, as the presiding judge, had a statutory obligation to resolve the competing contentions between Michael Schiavo and Plaintiffs. Fla. Stat. § 765.105.
Plaintiffs offer no authority for their contention that Judge Greer compromised the fairness of the proceeding or the impartiality of the court by following Florida law and fulfilling his statutory responsibilities under Chapter 765 as presiding judge and decision-maker. n4. Plaintiffs’ argument is that Judge Greer could not fulfill his judicial duties impartially while at [*12] the same time fulfilling his statutory duty to resolve the competing contentions of the parties as surrogate or proxy “to make decisions about life-prolonging procedures.” In re Guardianship of Schiavo, No. 2D05-968, — So.2d -, -, 2005 WL 600377 at *4 (Fl.Ct.App, March 16, 2005) (“Schiavo VI”).
n4. During argument, Plaintiffs’ counsel explained their criticism of Judge Greer’s official actions as Judge Greer having exceeded his lawful authority by acting as a guardian contrary to Fla. Stat. § 744.309(l)(b). Contrary to Plaintiffs’ argument, § 744.309 merely prohibits a judge from acting as a guardian except under certain specified familial circumstances.
Plaintiffs’ argument effectively ignores the role of the presiding judge as judicial fact-finder and decision-maker under the Florida statutory scheme. By fulfilling his statutory judicial responsibilities, the *1234 judge was not transformed into an advocate merely because his rulings are unfavorable to a litigant. Plaintiffs’ contention that the statutory [*13] scheme followed by Judge Greer deprived Theresa Schiavo of an impartial trial is accordingly without merit. Defendant is correct that no federal constitutional right is implicated when a judge merely grants relief to a litigant in accordance with the law he is sworn to uphold and follow. This Court concludes that Plaintiffs cannot establish a substantial likelihood of success on the merits of Count I.
B. Count II — Violation of Fourteenth Amendment Procedural Due Process Rights
In Count II, Plaintiffs contend that Theresa Schiavo’s Fourteenth Amendment procedural due process rights were violated by Judge Greer’s (1) failure to appoint a guardian ad litem (Dkt. 1, P 53), (2) failure to appoint an independent attorney to represent Theresa Schiavo’s legal rights (Dkt. 1, P 54) and (3) denial of what Plaintiffs describe as “access to court” by his “failure to ever meet Terri personally” and failure to “personally assess Terri’s level of cognition and her responsiveness” (Dkt. 1, P 55).
Initially, the Court finds no authority recognizing as a matter of federal constitutional or statutory right that a state trial judge is required to “personally assess” a ward’s “level of cognition [*14] and ... responsiveness.” Fla. Stat. § 744.3725, on which Plaintiffs rely, is applicable to an action seeking to commit the ward to a facility and other circumstances not relevant to this case. Plaintiffs’ conclusory allegation that Judge Greer denied Theresa Schiavo access to court by not requiring her presence is without merit.
With respect to Plaintiffs’ contention that Judge Greer violated Theresa Schia-vo’s procedural due process rights by failing to appoint a guardian ad litem, the record belies this contention. In June, 1998, Judge Rives sua sponte appointed Richard L. Pearse, Jr., Esq. as guardian ad litem “for the purpose of reviewing the request for termination of life support on behalf of the wards [sic].” In re Guardianship of Schiavo, No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., June 11, 1998). The record reflects that attorney Pearse “fully complied with his June 11, 1998 Court Order of appointment” and was accordingly discharged on June 16, 1999 by Judge Boyer of the Pinellas County Circuit Court. Pearse served as guardian ad litem for one year and ultimately testified as .a witness in the trial before Judge Greer. In re Guardianship of Schiavo, [*15] No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., Feb. 28, 2000). n5. Accordingly, assuming Fourteenth Amendment procedural due process requires the appointment of a guardian ad litem, there would be no constitutional deprivation here because three guardians ad litem were appointed to represent Theresa Schiavo’s interests over the course of the litigation.
n5. The record also reveals that attorney John H. Pecarek was appointed as guardian ad litem early in the proceedings. In re Guardianship of Schiavo, No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., Feb. 17, 1994). Late in the litigation, at the request of Florida Governor Jeb Bush, Pinellas County Chief Judge David Demers also appointed attorney Jay Wolfson, M.D. as guardian ad litem. Schiavo VI, 2005 WL 600377 at *1, n. 2.
Plaintiffs’ last contention is that Theresa Schiavo’s procedural due process rights were violated by Judge Greer’s refusal to appoint an independent attorney to represent her interests. The due process clause is [*16] implicated when there is a “depri *1235 vation of life, liberty or property at the hands of the government.” Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir.2003). If one or more of these constitutionally protected interests is at stake, as they undoubtedly are in this case, the due process clause requires notice and the opportunity to be heard. Id. “It is ... fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.” Fuentes v. Cortese, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Unquestionably, in some circumstances, a meaningful opportunity to be heard includes the right to be represented by counsel. However, “due process is a flexible concept that varies with the particular circumstances of each case, and to determine the requirements of due process in a particular situation we must apply the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).” Grayden, 345 F.3d at 1232-33.
The Mathews balancing test requires consideration of three distinct factors: “First, the private interest that will be affected by the official [*17] action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews, 424 U.S. at 335, 96 S.Ct. 893.
The first factor weighs the interest at stake. Plaintiffs urge that Theresa Schia-vo’s life is at stake, while Defendant argues that her liberty to exercise her right to refuse medical treatment is the interest being adjudicated. In either case, a fundamental and important interest is implieat-ed in the court proceedings determining the removal of artificial life support.
The second Mathews factor requires consideration of the risk of erroneous deprivation under the procedures used and the probable value of the additional protections urged by the Plaintiffs. Theresa Schiavo’s case has been exhaustively litigated, including an extensive trial, followed by another “extensive hearing at which many highly qualified physicians testified” to reconfirm that no meaningful treatment [*18] was available, and six appeals. As the Florida Second District Court of Appeal stated, “few, if any, similar cases have ever been afforded this heightened level of process.” Schiavo VI, 2005 WL 600377 at *3.
Throughout the proceedings, the parties, represented by able counsel, advanced what they believed to be Theresa Schiavo’s intentions concerning artificial life support. In Florida, counsel for Michael Schiavo as Theresa Schiavo’s guardian owed a duty of care to Theresa Schiavo in his representation. Op. Atty. Gen. 96-94 (November 20, 1996). Finally, with respect to presenting the opposing perspective on Theresa Schiavo’s wishes, the Court cannot envision more effective advocates than her parents and their able counsel. Plaintiffs have not shown how an additional lawyer appointed by the court could have reduced the risk of erroneous rulings.
With regard to the third factor, without question the state of Florida has an interest in the welfare of its citizens and in the legal process for adjudicating disputed claims such as were presented to Judge Greer in this case, as evidenced by Florida’s well defined statutory scheme. The court’s inherent authority to appoint [*19] a guardian ad litem, consult independent experts or appoint an attorney if warranted protects the state’s interest.
*1236 Balancing the three factors, this court concludes that Theresa Schiavo’s life and liberty interests were adequately protected by the extensive process provided in the state courts. Defendant Michael Schiavo and Plaintiffs, assisted by counsel, thoroughly advocated their competing perspectives on Theresa Schiavo’s wishes. Another lawyer appointed by the court could not have offered more protection of Theresa Schiavo’s interests. Accordingly, Plaintiffs have not established a substantial likelihood of success on the merits on Count II.
C. Count Three — Violation of Fourteenth Amendment Right to Equal Protection of the Law
For the same reasons relief under Count I was not appropriate, the relief sought in Count III via the equal protection clause is without merit. Plaintiff has not established a substantial likelihood of success on the merits of the claims set forth in Count III. See Cruzan v. Missouri Dept. of Health, 497 U.S. 261, 287 n. 12, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (“The differences between the choice made by a competent person to refuse [*20] medical treatment, and the choice made for an incompetent person by someone else to refuse medical treatment, are so obviously different that the State is warranted in establishing rigorous procedures for the latter class of cases which do not apply to the former class.”) (emphasis in original).
D. Counts IV and V — Violation of Religious Land Use and Institutionalized Persons Act (RLUIPA) and Violation of First Amendment Free Exercise of Religion Clause
Plaintiffs bring Counts IV and V alleging that Theresa Schiavo’s right to exercise her religion has been burdened by the state court’s order to remove the feeding tube. With respect to Count IV of the Complaint, Plaintiffs allege a claim under the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1), claiming that her rights to free exercise of her religion have been burdened by the state court’s order authorizing removal of her feeding tube in that removal of the feeding tube “imposes a substantial burden on Terry’s religious free exercise.” That statute expressly requires, however, that “no government shall impose a substantial burden on the religious exercise of [*21] a person ...” 42 U.S.C. § 2000cc(a) (emphasis added).
In Count V, Plaintiffs make a similar contention under the 42 U.S.C. § 1983 and the free exercise clause, alleging that “Terry’s religious beliefs are burdened” by execution of order “in that Terry is being forced to engage in an activity contrary to the tenets of her Roman Catholic faith.... ” Plaintiffs allege that Defendants have a constitutional duty to accommodate “Terry’s sincerely-held religious beliefs.”
Undoubtedly, Terry Schiavo enjoys, by virtue of 42 U.S.C. § 2000cc(a), a statutorily protected right not to have substantial burdens placed on her religious exercise by the government. The plain language of the statute prohibits government from imposing a substantial burden on the religious exercise of an individual • such as Theresa Schiavo. Similarly, the Free Exercise Clause contained in the First Amendment of the Constitution expressly protects the exercise of religion. In their Complaint, Plaintiffs allege that the state court’s order imposes a substantial burden on Theresa Schiavo’s free exercise of religion. (Complaint, P 67).
In order [*22] to succeed on either claim, however, Plaintiffs must establish that the Defendants were state actors. Plaintiffs’ claims fail because neither Defendant Schiavo nor Defendant Hospice *1237 are state actors. Moreover, the fact that the claims were adjudicated by a state court judge does not provide the requisite state action for purposes of the statute or the Fourteenth Amendment. See Harvey v. Harvey, 949 F.2d 1127, 1133-34 (11th Cir.1992) (“Use of the courts by private parties does not constitute an act under color of state law.”); Torres v. First State Bank of Sierra County, 588 F.2d 1322, 1326-27 (10th Cir.1978) (“We do not think that the ‘color of law' reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, ... subject to the normal processes of appeal.”); see also Dahl v. Akin, 630 F.2d 277, 281 (5th Cir.1980).
This court appreciates the gravity of the consequences of denying injunctive relief. Even under these difficult and time strained circumstances, however, and notwithstanding Congress’ expressed interest in the welfare of Theresa Schiavo, [*23] this court is constrained to apply the law to the issues before it. As Plaintiffs have not established a substantial likelihood of success on the merits, Plaintiffs’ Motion for Temporary Restraining Order (Dkt. 2) must be DENIED.
DONE AND ORDERED in chambers this 22nd day of March, 2005.
JAMES D. WHITTEMORE
United States District Judge

. Our dissenting colleague says that "the denial of Plaintiffs' request for an injunction frustrates Congress’s intent, which is to maintain the status quo.” Dissenting Op. at 1237. The status quo is that Mrs. Schiavo is not receiving nutrition and hydration. The plaintiffs do not want the status quo maintained. They want this Court or the district c.ourt to .issue an injunction affirmatively requiring the respondents to change the status quo by bringing about the surgical procedure necessary to reinsert the feeding tube into Mrs. Schiavo.

. The dissent bemoans the fact that the merits of the plaintiffs' claims will never be litigated in federal court. The district court's finding regarding the first-prong injunctive relief factor reflects that those claims lack merit, or at least that the possibility of any merit is too low to justify preliminary injunctive relief.

. Part II of the dissent argues that we should grant an injunction and discusses the four factors as though this Court were making the decision in the first instance. We are not. We are an appellate court reviewing the district court’s decision. There is no occasion for us to decide whether to issue an injunction pending appeal, because the only appeal we have before us is from the district court’s denial of a temporary restraining order, and we are deciding that appeal now.

.In arguing that an injunction should be issued, the dissent refers to "a situation where a few days' delay” is all that is necessary. That is not this situation. To afford the plaintiffs the pretrial discovery and full jury trial of all issues they demand would require a delay of many months, if not longer.

. Contrary to the dissent’s assertion, we do not believe that the text of the Act limits or eliminates a court’s power to grant temporary or preliminary relief. Exactly the contrary. Our position is that the Act, which does not mention that subject, and which was amended to remove a provision that would have changed the law, does not affect it at all. The district court applied settled law and so do we.

. A petition for rehearing or suggestion for rehearing en banc is not, of course, required before a petition for certiorari may be filed in the United States Supreme Court. If, however, a petition for rehearing or rehearing en banc is to be filed, it must be' filed by 10:00 a.m. ET, March 23, 2005. See Fed.R.App.P. 35(c) & Fed.R.App.P. 40(a)(1).