[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15542
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2010
JOHN LEY
CLERK

D. C. Docket No. 04-20834-CV-ASG

WACHOVIA BANK, et al.,

                                        Plaintiffs-Counter Defendants,

                        versus

DR. PAUL TIEN, et al.,

                        Defendants-Cross Claim Defendants,

HENRY TIEN,

                                        Defendant-Cross Claimant-
                                        Cross Claim Defendant-Appellant,

                        versus

YIFE TIEN,
AMERICAN UNIVERSITY OF THE CARIBBEAN, CAYMAN
ISLAND,
AMERICAN UNIVERSITY OF THE CARIBBEAN,  N.V., ST.,
AMERICAN UNIVERSITY OF THE CARIBBEAN, a Montserrat,
a British West Indies company,
AMERICAN UNIVERSITY OF THE CARIBBEAN SCHOOL OF
MEDICINE,
a Cayman Islands, British West Indies company,

Defendants-Counter Claimants-
Cross Claim Defendants-Cross Claimants-
Appellees,

MEDICAL EDUCATION INFORMATION OFFICE, INC.,
a Florida corporation,

Defendant-Cross Claim Defendant-Appellee,

HON. KURT DE FREITAS,
as Attorney General for and on behalf
of the Turks & Caicos Islands, BWI,

Defendant-Counter Claimant-
Cross-Claimant- Cross Claim Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 22, 2010)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Henry Tien appeals *pro se* from the partial final judgment in an interpleader action, 28 U.S.C. § 1335, which imposed on him approximately $3.4 million in sanctions. He claims that the district court abused its discretion in exercising its inherent power to impose sanctions for his alleged bad-faith conduct. He further claims that the district court abused its discretion in determining the amount of the

sanctions award.[1]  Upon review, we affirm.

## I.

This appeal arises from a complaint for interpleader filed by Wachovia Bank, which alleged that various parties had made conflicting and uncertain claims to the funds in 5 bank accounts that, at the time, totaled more than $90 million. Included among the potential claimants were: (1) American University of the Caribbean ("AUC"), American University of the Caribbean, N.V., and American University of the Caribbean School of Medicine ("AUCSOM"), collectively "the AUC companies"; (2) Medical Education Information Office, Inc. ("MEIO"), which had been incorporated to provide administrative services to the AUC companies; (3)  Paul Tien, founder of AUCSOM and MEIO; (4) Yife Tien, one of Paul's sons and the president of MEIO; (5) Henry Tien, Paul's other son and the former financial administrator of MEIO; and (6) Ming Tien, Paul's wife and an administrative assistant for MEIO.

Yife, the AUC companies, and MEIO (collectively "the appellees") asserted a cross-claim, alleging that all of the interpleaded funds were corporate funds

---

[1] Henry also claims that when the district court taxed costs against him pursuant to Federal Rule of Civil Procedure 54(d), it improperly included certain audiovisual and computer-animation expenses incurred by the appellees in preparation for trial.  The record shows that those costs were included in the sanctions award, not the taxation of costs.  Thus, Henry has not shown an abuse of discretion in the district court's calculation of the taxable costs. *See Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007).

belonging to the AUC companies and MEIO. In particular, they alleged that Henry had transferred more than $61 million in funds from Paul's and the AUC companies' accounts into 2 accounts in the name of Southeastern Trust Company, Ltd. ("SETC"), apparently in an effort to retain control over the companies' finances and to "scoop the pool" upon his father's death. Neither Yife nor Paul asserted a personal claim to the interpleaded funds. Paul assigned to AUCSOM any interest he might have in the funds, and the district court dismissed him from the action. Henry and Ming did not assert their own cross-claim, but they filed an answer arguing, as an affirmative defense, that the overall AUC enterprise had been a joint venture of the family and, thus, Henry and Ming each owned 25% of the funds.

During discovery, Wachovia learned that SETC had been incorporated in the Turks and Caicos Islands ("TCI") and had been dissolved in 1988. Under TCI law, the TCI government potentially had a claim to SETC's unclaimed assets, so Wachovia amended the complaint to add TCI as a defendant. TCI asserted counterclaims and cross-claims, which it litigated vigorously for two years, until it reached a settlement agreement with the appellees.

Discovery in this action continued for approximately two-and-a-half years. During that time, the district court granted several motions to compel Henry and

Ming to produce documents, answer interrogatories, and attend depositions, and it stated in one order that it was "greatly disturbed" by their general conduct of discovery. Approximately one year into the discovery period, MEIO filed a state-court action in replevin, seeking to recover a subset of the documents that were the subject of the discovery requests. In response to the replevin action, Henry's and Ming's counsel took custody of all of the documents that were the subject of the interpleader action, amounting to hundreds of thousands of pages of corporate records that Henry had retained in his home despite the termination of his employment, and the documents were made available to the appellees for review.

Shortly before the close of discovery, American University ("American"), an unrelated institution in Washington, D.C., moved to intervene in the interpleader action. American described its ongoing trademark-infringement litigation against the AUC companies in front of the Trademark Trial and Appeal Board, which Henry had been litigating *pro se* on the AUC companies' behalf, despite the termination of his employment. American asked the court to litigate its trademark claims in the interpleader action in the interest of judicial economy and permitting American to recover its anticipated judgment from the interpleaded funds. Following a response by the appellees, the court denied American's motion.

In the days before trial, Henry's and Ming's counsel moved twice for leave

to withdraw, citing a complete breakdown in communications, Henry's insistence on advancing positions that counsel did not believe to be accurate, and other concerns. The court denied counsel's motions to withdraw, but it acknowledged that Henry was a difficult client who had taken seemingly inconsistent positions throughout the course of the litigation. Counsel withdrew their Federal Rule of Civil Procedure 11 certification from a number of pleadings, including the answer to the appellees' cross-claim.

After a bench trial, the district court found that SETC had been stricken from TCI's corporate register in 1988, and there had been no bank accounts in that name prior to the year 2000. Henry began to open accounts in 2000, using SETC merely as a fictitious name, as part of a scheme to remove money improperly from both Paul's personal account and AUCSOM's operating accounts, and to deposit such funds into an account accessible by Henry and Ming. To do so, Henry had taken advantage of Yife's and Paul's trust in him to obtain their signatures on certain forms without their full understanding and consent, and he presented to Wachovia's predecessor bank falsified documents that purported to give him the authority to transfer funds from the corporate accounts without approval. Yife and Paul learned of the SETC accounts from Wachovia in 2003. At that time, Paul authorized the transfer of the funds into new accounts on which Henry and Ming

6

were no longer signatories. Henry and Ming then appeared at Wachovia in January 2004 and attempted to remove all funds from both SETC accounts. When they were denied access, they claimed that they were 50% shareholders of the corporations and that Paul and Yife lacked corporate authority to change the accounts.

The court explicitly found that Henry had been uncooperative throughout discovery, particularly in that he retained hundreds of banker boxes full of corporate financial records in his home, and an action in replevin had been required to remove the boxes to counsel's office. In addition, it was revealed during trial that Henry had improperly retained possession of a number of stock certificates, checks, and papers belonging to the corporations, including some valued at approximately $1.6 million that, by his own admission, he had transferred into his name and used to pay his attorney fees and personal expenses.

The court found that the $2.4 million in one of the SETC accounts belonged to Ming, $2.2 million of the funds in the other SETC account had belonged to Paul as of the date on which the interpleader complaint was filed, and all of the remaining interpleaded funds belonged to AUCSOM, AUC, or MEIO. All of the funds in the corporate accounts consisted of the companies' historical revenues, not distributions to individual shareholders. Henry and Ming had insisted that,

7

nevertheless, each family member owned 25% of each account based on a long-standing joint-venture agreement, but the evidence overwhelmingly established that Paul had exercised majority ownership and full management control of AUC at all times, and he maintained full ownership, control, and operation of AUCSOM. At best, the preponderance of the evidence showed that he had decided to give some AUC stock to family members, but he had declined to give them stock in the other AUC companies. No evidence supported Henry's and Ming's joint-venture theory except their own self-serving testimony.

The appellees moved for approximately $3.7 million in sanctions. The district court denied sanctions as to Ming but imposed them on Henry, finding that his bad-faith conduct before and during the litigation had resulted in four years of litigation and millions of dollars in fees and costs. As to the attorney fees, the court found that the litigation had been lengthy, paper-intensive, and complex, and the importance of document review warranted the assignment of multiple attorneys to the task. Henry could have avoided the extensive document review if he had not provided the documents in a state of disarray and concealed his knowledge of the true ownership of the funds. The court also included the fees and costs associated with the trademark case and other related litigation, insofar as those amounts were necessary to the interpleader litigation, such as the expense of opposing

American's motion to intervene and investigating Henry's assertion in the interpleader case that he was the owner of the AUC mark.

The court further included the expense of defending and settling TCI's claims, including the $250,000 settlement payment. Specifically, it found that Henry's knowingly false assertions regarding the SETC accounts had led TCI to assert its claims, Henry had placed on the appellees the burden of defending and settling the claims on everyone's behalf, and the settlement had saved all of the parties hundreds of thousands of dollars in additional legal fees.

The court rejected Henry's challenges to the attorneys' billing practices, concluding that the detailed bills adequately described the work performed, and the firm's practice of billing in 0.25-hour increments rather than 0.1-hour increments was balanced by its practice of not billing for short telephone calls and emails. The London attorney who was hired to help defend the TCI claims had been necessary to the litigation, as he was an expert in the arcane areas of English and TCI law implicated in those claims, and his £750 hourly rate was in keeping with other London attorneys of his experience. Furthermore, his rate was mitigated by the rates of the local attorneys, which were significantly lower than those of similarly experienced attorneys in the region. Nevertheless, the court made a 5% reduction in the total sanctions request in order to remove any inadvertent duplications or

9

inefficiencies in the attorneys' time. As a result, the court assessed a final sanctions award of $3,405,651.00.

## II.

Attorneys' fees ordinarily are not recoverable in the absence of a statute or enforceable contract to that effect. *Rothenberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1471 (11th Cir. 1984). An exception to this general rule arises from the courts' inherent power to impose sanctions against an attorney or party for bad-faith, vexatious, wanton, or oppressive conduct. *See Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001); *Rothenberg*, 736 F.2d at 1471. The courts' exercise of this power is reviewed for abuse of discretion. *See Byrne*, 261 F.3d at 1106. Thus, we will reverse only if the district court applied an incorrect legal standard, applied improper procedures, relied on clearly erroneous findings of fact, or reached a conclusion that was clearly unreasonable or incorrect. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005).

A finding of bad faith is warranted where the individual knowingly or recklessly raises a frivolous argument, argues a claim for the purpose of harassing an opponent, delays or disrupts the litigation, or hampers enforcement of a court order. *Byrne*, 261 F.3d at 1121. The district court must do more than conclude that the individual acted in bad faith. *Id.* at 1123. Rather, it must make specific

10

findings as to the individual's conduct that warranted sanctions. *Id.* The court's inquiry should focus primarily on the individual's conduct and motive, rather than the validity of the case. *Rothenberg*, 736 F.2d at 1472.

Here, Henry falsified corporate documents, took advantage of his family's trust, and opened secret accounts in a fictitious name, as part of a scheme to embezzle more than $61 million from AUCSOM's and his father's accounts. He knew from the outset the true ownership of the funds, but he asserted his frivolous claim of joint ownership nevertheless, and he pursued it for four years. He was uncooperative throughout discovery, an action in replevin was required to remove hundreds of boxes of corporate documents from his home, he produced the documents in a state of disarray that necessitated extensive document review, and he improperly retained possession of certain corporate assets that he transferred to his own name and used to pay his own legal and personal expenses. His knowingly false assertion that the SETC accounts were connected to the long-defunct TCI entity led to TCI's involvement in the suit, and he left the appellees to defend those claims on his behalf. Although Henry makes the bare assertion that his trial attorneys could have presented evidence that would show he had pursued his claims in good faith, he has never indicated what that evidence might be, and no suggestion of such evidence appears in the record.

The district court's specific findings demonstrate that Henry knowingly or recklessly raised and pursued frivolous claims, and his conduct caused repeated delays and disruptions to the litigation. *See Byrne*, 261 F.3d at 1123. Under the circumstances, the district court reasonably concluded that Henry had acted in bad faith, and its imposition of sanctions was not an abuse of its discretion. *Schiavo*, 403 F.3d at 1226; *Byrne*, 261 F.3d at 1106.

### III.

A district court clearly acts within its discretion when it fashions a sanction which is a direct response to the harm that the bad-faith conduct caused. *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998). "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991), as is the inclusion of such nontaxable costs as expert-witness fees, *Barnes*, 158 F.3d at 1215.

Here, the district court reasonably found that the attorney fees incurred, including the staffing decisions, time expenditures, billing rates, and the retention of the London attorney, were appropriate for a case of this magnitude and complexity. Counsel submitted hundreds of pages of detailed bills to verify the necessity of the expenditures, and the court did not clearly err in finding that a 5% deduction from the requested award would account for any inadvertent duplication

or inefficiency. The court also reasonably included the TCI settlement amount, which was incurred as a direct result of Henry's bad-faith claims and false sworn statements. It was reasonable, as well, to include fees associated with the trademark and other litigation that were necessary to the interpleader litigation and brought about by Henry's own conduct.

Henry has not established that the district court applied incorrect legal standards, relied on clearly erroneous facts, or reached a clearly unreasonable conclusion about the appropriate amount of the sanctions award. *See Schiavo*, 403 F.3d at 1226. Accordingly, he has not shown that the $3.4 million award was an abuse of the court's discretion. *See Byrne*, 261 F.3d at 1106.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**