Hy WOLFE, Interpleader Plaintiff,

v.

The **ESTATE OF Peter CONZEN, the Ancillary Estate of Peter Conzen, Luba Ostashevsky, Christa Lindhorst, Ilse Henin, Margarita Pascucci, Marcel Ruckner, Danni Ruckner, Ellissa Bemporad, Ori Moran, Carmela Golding–Engelsrat, Interpleader Defendants.**

No. 10 Civ. 7675 (JSR).

United States District Court, S.D. New York.

May 20, 2011.

Robert Blossner, New York, NY, for Plaintiff.

Martin Frederik Gusy, Gusy Van Der Zandt LLP, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

In this interpleader action, plaintiff Hy Wolfe claimed he could not determine,

without hazard to himself, who among several possible claimants was the rightful owner of $87,400 (the "funds") that he withdrew from the bank accounts of his deceased friend, Peter Conzen, allegedly under the erroneous belief that his power of attorney over those funds survived Conzen's death. On December 13, 2010, Conzen's sisters, Christa Lindhorst and Use Henin (the "Conzen Sisters"), moved for the release of funds, and, because no other claimants appeared on the motion return date, the Court, by Order dated December 20, 2010, awarded them the funds by default judgment. Subsequently, the Conzen Sisters filed the instant post-judgment motion against Wolfe seeking (1) prejudgment interest on the funds at 9%, accrued from September 26, 2007, the date Wolfe withdrew the funds, and (2) attorneys' fees of $44,752.60. Having carefully considered the parties' submissions, the Court, for the reasons specified below, hereby denies the motion in its entirety.

The pertinent facts, undisputed, are as follows. Wolfe and Conzen were friends who shared a common interest in the preservation of the Yiddish language and culture. Memorandum in Opposition to Defendants' Motion for Interest and Attorney's Fees ("Pl. Mem.") at 1, 3. Conzen left the United States for Germany in 2002, but retained an apartment in New York City, which he entrusted to Wolfe to use as a "Yiddish house and library" (the "Yiddish Center"). *Id.* at 1–2. To facilitate Wolfe's work, Conzen granted Wolfe the power of attorney over several bank accounts held in Conzen's name at JP Morgan Chase Bank N.A. (the "Chase accounts" or "accounts"). *Id.* at 2. After Conzen passed away in August 2005, Wolfe alleges that he believed that his power of attorney over the Chase accounts survived Conzen's death. In accordance with this belief, Wolfe continued to make various drawdowns on the accounts to pay for expenses related to the Yiddish

Center. *Id.* at 3. The Conzen Sisters do not object to Wolfe's direct use of the funds to pay for expenses related to the Yiddish Center. *Id.*

However, Wolfe alleges, in 2007, he became "[f]earful that Conzen's relatives . . . intended to disband the [Yiddish Center]." *Id.* Therefore, allegedly in order to "safeguard" the funds "for the preservation of Yiddish culture," Wolfe, on September 26, 2007, withdrew all the remaining funds in the Chase accounts, and placed them in accounts held in his own name. *Id.* After doing so, he continued to use the funds for the sole benefit of the Yiddish Center. *Id.*

Conzen's last will and testament, dated May 9, 2002, states as follows:

I, Peter Conzen, bequeath my studio in New York to Margarita Pascucci. In addition to this I bequeath to Margarita Pascucci the sum of 50,000.00 U.S. Dollars. I bequeath to Elissa Bemporad likewise the sum of 50,000.00 U.S. Dollars. My estate in Jerusalem (Ein Kerem) I bequeath to the Zuckerman family. To Carmela Goldin–Engelsrat and to Ori Moran I bequeath the sum of 100,000.00 U.S. Dollars each. To my godson Marcel Ruckner I bequeath the sum of 70,000.00. To my adoptive godson Danni Riickner I bequeath the sum of 50,000.00. [ . . . ]

The remainder of my estate and assets shall be distributed among my sisters respectively nephews and nieces in fair shares.

Declaration of Martin F. Gusy, dated December 13, 2010 ("Gusy Decl.") Ex. B. After Conzen's death, a German court issued a Joint Heirs' Certificate to the Conzen Sisters, *id.* Ex. C, and, on December 7, 2006, the Conzen Sisters finished fulfilling all of Conzen's specific legacies as set forth above. Memorandum of Law in Support of Defendants' Christa Lindhorst and Ilse Henin Motion for Turn Over of Al-

leged Interpleader Funds ("Def. Mem.") ¶ 7.

Separately, in 2004, Conzen appointed Wolfe as a 1/3 beneficiary of his term life insurance. In August 2006, Wolfe was informed about this entitlement and received roughly $65,000 in benefits therefrom. *Id.* ¶¶ 10–11.

In August 2008, the Conzen Sisters, through their German attorney, requested that Wolfe turn over the funds to them; Wolfe refused. *See* Gusy Decl. Ex. K. In December 2009, the Manhattan District Attorney's Office initiated a criminal investigation of Wolfe for his alleged unlawful withdrawal and holding over of the funds. Def. Mem. ¶ 12. Though the District Attorney's Office offered Wolfe a plea deal whereby he would plead guilty to a misdemeanor and turn over the funds to the Conzen Sisters, Wolfe rejected the deal on the basis of his assertion that the funds were lawfully in his possession and control for the purpose of carrying out Conzen's desire to support the Yiddish Center. *Id.* ¶ 13. On June 28, 2010, a New York County Grand Jury voted an indictment against Wolfe, charging him with one count of Grand Larceny in the Second Degree under New York Penal Law § 155.40 for unlawfully holding the funds. *Id.* ¶ 14.

After his indictment, Wolfe expressed that he wished to return the funds to their rightful owner(s), but that he did not know to whom the funds were owed. *See* Gusy Decl. Ex. H. The presiding Judge, the Honorable Lewis B. Stone, of New York Supreme Court, New York County, suggested that, as a measure of his good faith in this respect, Wolfe initiate the instant interpleader action. Pl. Mem. at 5. After this action was initiated, the District Attorney's Office shared documents with Wolfe that purported to establish that all the specific legacies in Conzen's will had been fulfilled, and that accordingly, the Conzen

Sisters were owed the funds as the will's residuary legatees. *See* Gusy Decl. Ex. L. As noted, this Court granted default judgment to the Conzen Sisters on December 20, 2010, transferring the remaining funds.

On the basis of the foregoing, the Conzen Sisters seek an award of (1) attorneys' fees and (2) pre-judgment interest on the funds, accrued from the date Wolfe withdrew the funds from the Chase accounts.

▇▇▇ Turning first to the issue of attorneys' fees, the Court notes that, although parties are generally expected to bear their own attorneys' fees, it is well-recognized that federal courts may exercise their "inherent power" to shift the burden of such fees onto a party that has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Accordingly, a court may, at its discretion, impose an award of attorneys' fees against a party who abuses interpleader process, by, for example, initiating an interpleader action so as to keep funds away from a party legally entitled to them. *See Wachovia Bank v. Tien,* 406 Fed.Appx. 378 (11th Cir.2010); *City of Morgan Hill v. Brown,* 71 Cal.App.4th 1114, 1125–1126, 84 Cal.Rptr.2d 361 (Ct. App. 4th Div.1999).

▇▇▇ The Conzen Sisters allege that Wolfe abused the interpleader process in this fashion. Specifically, they assert that this action was "an effort to retroactively mask Wolfe's larceny." Def. Mem. ¶ 19. The Court finds this argument unpersuasive. The very purpose of an interpleader action is to safeguard the rights of a party who concedes he has no entitlement to the property in question. *See Republic of Philippines v. Pimentel,* 553 U.S. 851, 872, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008) ("the purpose of interpleader ... is to prevent a stakeholder from having to pay

two or more parties for one claim."). While Wolfe's underlying conduct in withdrawing the funds from Conzen's Chase accounts may or may not have been wrongful, this is completely irrelevant to determining Wolfe's relative good faith in relation to the instant action, where he has expressly disclaimed any interest in the funds and deposited them into Court.

The Conzen Sisters have provided no basis by which the Court could infer that the instant *interpleader action* was initiated in bad faith. The action was initiated after Judge Stone indicated that Wolfe could demonstrate his good faith by initiating just such an action. Moreover, it was only after the Complaint in this action was filed that Wolfe received positive assurances from the District Attorney's Office, accompanied by written documentation, that all of Conzen's specific legacies had been fulfilled. *See* Pl. Mem. at 5. Up until that point, Wolfe could not determine with certainty that the Conzen Sisters were the rightful owners of the funds, which is precisely the predicament that the interpleader process was designed to address. Accordingly, the Court concludes that the Conzen Sisters have failed to establish that Wolfe initiated the instant action in bad faith, and therefore denies the motion to the extent it seeks an award of attorneys' fees.

■ As for prejudgment interest, under New York law, "in an action of an equitable nature," an award of prejudgment interest, as well as "the rate and the date from which it shall be computed" lies in the "court's discretion." N.Y.C.P.L.R. § 5001(a); *see also Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir.2000) (in a diversity action, state law governs the availability of prejudgment interest); *Gelfgren v. Republic Nat., Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir.1982) (whether to award prejudgment interest in an interpleader action depends on equitable considerations, and is thus left to the district court's discretion); *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290–92 (8th Cir.1980) (same); *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 366 (5th Cir.1975) (same). Among the equitable considerations that courts have considered in awarding prejudgment interest in an interpleader action are: (1) whether the stakeholder unreasonably delayed in instituting the action or depositing the funds with the court, (2) whether the stakeholder used the funds for his benefit and would be unjustly enriched at the expense of the claimants who have claims to the funds, and (3) whether the stakeholder eventually deposited the funds into the court's registry. *See* Def. Mem. ¶ 23; *see also Bauer*, 630 F.2d, at 1290–92; *Phillips Petroleum*, 513 F.2d at 368–69; *Massachusetts Mutual Life Ins. Co. v. Central Penn National Bank*, 372 F.Supp. 1027, 1035 (E.D.Pa. 1974).

Here, the Conzen Sisters contend that Wolfe unreasonably delayed in instituting this action, as he held onto the funds for approximately 25 months after the Conzen Sisters first requested that he turn the funds over to them (from August 2008 to October 2010). Def. Mem. f 25. In response, Wolfe contends that he did not act in an untimely manner because "for much of the period in question he was . . . acting under the [erroneous but good faith] belief that he had the lawful right to withdraw the funds" pursuant to a durable power of attorney over the Chase accounts. Pl. Mem. at 6.

■ On the basis of the foregoing, the Court concludes that an award of prejudgment interest is not warranted in the circumstances of this case. Most notably, the Conzen Sisters do not allege that Wolfe used the funds for his own personal benefit, or that he was in any way unjustly enriched by their withdrawal into his personal account. In addition, the record be-

fore the Court strongly indicates that Wolfe, at least initially, was operating under the good faith belief that he was within his rights to withdraw the funds from the Chase accounts so as to effectuate Conzen's desire to use the funds for the benefit of the Yiddish Center. This belief was completely reasonable because Conzen had, prior to his death, granted Wolfe the power of attorney over the Chase accounts. The sincerity of Wolfe's stubbornness in this respect is confirmed by the fact that he refused to plead guilty to a misdemeanor—thus risking criminal sanctions—on the basis of his erroneous understanding of his rights with regard to the funds.[1] Given the absence of proof that Wolfe's belief that his power of attorney over the Chase accounts survived Conzen's death was formed in bad faith or unreasonable, the Court concludes that the equities lie in favor of denying the Conzen Sisters' motion for prejudgment interest.

On the basis of the foregoing, the Court hereby denies the motion in its entirety. The Clerk of the Court is directed to close document numbered 9 on the docket of this case, and to enter judgment closing the case.

SO ORDERED.

---

1. After Wolfe fulfilled Judge Stone's suggestion that he initiate this interpleader action, the misdemeanor charge was dismissed.