## LAND–CELLULAR CORPORATION, a Florida corporation, and Robert Moses, Plaintiffs,

### v.

## Frank ZOKAITES, Defendant.

### Nos. 05–23168–CIV, 06–60349.[1]

United States District Court, S.D. Florida.

Oct. 23, 2006.

---

**1.** Pursuant to Administrative Order 2006–18 and beginning July 24, 2006, Magistrate Judge Edwin G. Torres has been temporarily paired with Judge Lenard for all new case assignments, all new referrals in existing cases, and all matters previously referred to Magistrate Judge Theodore Klein.

Jeffrey A. Hulton, Esq., Brandt Milnes & Rea, Pittsburgh, PA.

Eric N. Assouline, Esq., Assouline & Berlowe, P.A. for the Plaintiffs Land–Cellular Corporation and Robert Moses.

***ORDER ADOPTING REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING ORDER OR REPLEVIN OF SECURED COLLATERAL BE DENIED IN PART AND GRANTED IN PART (D.E.67) AND DIRECTING THE CLERK OF THE COURT TO ISSUE A WRIT OF REPLEVIN***

LENARD, District Judge.

**THIS CAUSE** is before the Court upon the Report and Recommendation That Defendant's Motion for Temporary Restraining Order or Replevin of Secured Collateral Be Denied in Part and Granted in Part (D.E.67), issued September 13, 2006 by Magistrate Judge Edwin G. Torres. On September 19, 2006, Defendant filed his Objections. (D.E.68.) On September 20, 2006, Plaintiff Land–Cellular Corp. filed its Limited Objections. (D.E.69.) On October 2, 2006, Defendant filed a Response to Plaintiff's Objections. (D.E.73.) Also on October 2, 2006, Defendant Land–Cellular Corp. filed a Response to Defendant's Objections. (D.E.74.) Having considered the Report, the Objections, the Responses, and the record, the Court finds as follows.

## I. Factual and Procedural Background

Plaintiff Land–Cellular ("the Company") is in the business of designing, manufacturing, distributing and selling wireless cellular modems and Plaintiff Robert Moses is the President of Land–Cellular. (D.E. 4 at ¶ 8.) Defendant Frank Zokaites is a director and shareholder of Land–

Cellular who allegedly lent money to the Company at usurious interest rates of between 36% and 46.9% over several years. (*Id.* at ¶¶ 9–10.) On December 8, 2005, Plaintiffs filed their Amended Complaint (D.E.4) in Case No. 05–23168–CIV–LENARD, alleging that a number of previous loans made to Plaintiffs by Defendant violated Florida's usury and loan sharking laws and were therefore unenforceable. For each of these loans, Plaintiffs sought to have Defendant forfeit the principal and return all interest paid by the Company to Defendant. (*Id.* at 9–11.)

On December 30, 2005, Defendant commenced an action in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking repayment of the March 28, 2005 loan. (Case No. 06–60349–CIV–LENARD, D.E. 2 at 6–7.) This case was removed to the United States District Court for the Western District of Pennsylvania on January 12, 2006. (*Id.* at 2.) On March 13, 2006, the Pennsylvania District Court granted Defendant's Motion to Transfer Case, and transferred the case to this Court. (*Id.* at 4.) On April 20, 2006, this Court issued an Order consolidating Case No. 06–60349–CIV–LENARD with Case No. 05–23168–CIV–LENARD, finding they contained similar issues of law and fact. (Case No. 06–60349–CIV–LENARD, D.E. 6.)

After transfer and consolidation, Defendant filed the instant Motion for Temporary Restraining Order (D.E.26) against the Company seeking, *inter alia,* to enforce the loan agreement's provision that Land–Cellular assemble and deliver its assets to Zokaites. Zokaites alternatively requested a writ of replevin be issued under Florida law to take possession of Land–Cellular's inventory and property used to collateralize the loan. This Motion was referred to Magistrate Judge Edwin Torres, who held a day-long hearing on the matter on August 25, 2006. (D.E. 67 at 1.)

On September 26, 2006, the Court issued an Order granting Defendant Zokaites' Motion to Dismiss (D.E.71) and dismissing Plaintiffs' Amended Complaint, finding, *inter alia,* that Plaintiff could state no claim that the loans were invalid under Florida's usury laws, as the loans were to be governed by Pennsylvania law. (*Id.* at 17–18.)

## II. Report and Recommendation of the Magistrate Judge

On Defendant's Motion for Temporary Restraining Order (TRO), the Magistrate Judge found that a TRO was an inappropriate vehicle to achieve the relief sought by Defendant, namely, that the Company assemble and deliver its assets to Zokaites. (D.E. 67 at 4.) Because notice had been provided to Plaintiffs and because no showing was made that injunctive relief without notice was required, the Magistrate Judge construed Defendant's Motion as a motion for preliminary injunction. (*Id.*) Pursuant to *Fed.R.Civ.P.* 65(a), the Magistrate Judge found that Defendant was not entitled to injunctive relief because he had failed to show an imminent irreparable injury, that the harm to Defendant would be greater than that suffered by Plaintiffs, and that the relief sought would serve the public interest. (*Id.* at 5–6.)

On Defendant's alternative Motion for Writ of Replevin, the Magistrate Judge analyzed Defendant's request pursuant to Fla. Stat. § 78.067(2), which allows a petitioner to obtain possession of property during the pendency of litigation upon a showing that petitioner's claim is likely to succeed on the merits. (*Id.* at 8.) After holding an evidentiary hearing on August 25, 2006, the Magistrate Judge made the following findings. First, he found that Defendant Zokaites' testimony was fully credible with regard to obtaining and duly recording a security interest in the Com-

pany's assets in connection with the loans at issue. (*Id.* at 9–10.) Second, the Court found that Zokaites indeed had a duly recorded, fully binding, and enforceable security interest in the Company's assets. (*Id.* at 11.) Third, the Court found that the Company had defaulted on its loan from Defendant, and that Zokaites was thus entitled to possess the collateral for his security interest. (*Id.*) In making this last finding, the Magistrate Judge determined that the Company's primary defense, that the loans from Defendant were usurious under Florida law, would likely prove unsuccessful because Pennsylvania law would likely govern the loan agreement. (*Id.* at 12–14.) Finally, the Magistrate Judge found that Plaintiffs' equity-based arguments against replevin were inapposite because they were not defenses to Zokaites' right to immediate possession. (*Id.* at 14–16.) Therefore, the Magistrate Judge found that, "a writ of replevin should issue as to all tangible property identified in the Security Agreement (as opposed to unidentifiable or intangible property that may be included in that Agreement that cannot be physically repossessed by the Marshal)." (*Id.* at 16.) The Magistrate Judge also found that, in the alternative, the Company could post a bond equaling the total value of the property that may be seized under the writ, for a minimum of $250,000. (*Id.* at 16–17.)

### III. Objections

On September 19, 2006, Defendant Zokaites filed his Objections to the Magistrate's Report. (D.E.68.) Therein, Defendant states that he objects solely to the failure of the Magistrate Judge to include the Company's cash, bank account and accounts receivable in his recommended Order for Writ of Replevin, despite being subject to Defendant's perfected security interest in those assets. (*Id.* at 3–5.) In the alternative, Defendant requests that the writ be amended to include the replev-

in of: (1) each account debtor's check that the Company receives, (2) the Company's checkbook, and (3) all accounts receivable invoices and reports. (*Id.* at 5.)

On September 20, 2006, Plaintiff Land–Cellular filed its Limited Objections to the Magistrate's Report. (D.E.69.) Therein, Plaintiff requests that the proposed writ of replevin be clarified by the Court to delineate the property subject to the writ. (*Id.* at 2.) Plaintiff also argues that Defendant Zokaites is barred from relief due to unclean hands, resulting from his attempts to destroy the Company by insisting that he collect on his loan. (*Id.* at 2–3.) Finally, Plaintiff argues that the Court is enjoined from enforcing any rights derived from the loan agreement until Zokaites pays the documentary stamp taxes on the security agreement he seeks to enforce. (*Id.* at 5.)

On October 2, 2006, Defendant filed a Response to Plaintiff's Objections. (D.E.73.) Therein, Defendant argues that no specific list of assets for replevin is required. (*Id.* at 2.) Defendant further maintains that the equitable arguments against replevin proffered by Plaintiff were already considered and rejected by the Magistrate Judge, based upon the well settled law that replevin actions are statutory in nature and subject only to defenses that can defeat the right of immediate possession. (*Id.* at 3.) Finally, Defendant contends that Florida documentary stamps are not applicable or payable in this case, as the loan agreement was executed and delivered in Pennsylvania. (*Id.* at 4.)

Also on October 2, 2006, Plaintiff Land–Cellular filed a Response to Defendant's Objections. (D.E.74.) Therein, Plaintiff argues that under Florida law, bank accounts and accounts receivable are intangible property not subject to a writ of replevin. (*Id.* at 1–2.) Plaintiff further argues that no cases cited by Defendant support the proposition that intangi-

ble personal property may properly be the subject of a writ of replevin. (*Id.* at 3.)

## IV. Analysis

The Court notes at the outset that the Parties generally have no objections to the findings of fact and well-reasoned conclusions of law contained in the Magistrate's Report, including Magistrate Judge Torres' finding that a writ of replevin should issue. Indeed, the Magistrate Judge's finding that Defendant Zokaites' underlying claim was likely to succeed on the merits has been confirmed by the Court's September 26, 2006 Order Granting Defendant's Motion to Dismiss (D.E.71) and finding that Plaintiffs could not state a claim for relief under Florida's usury laws. The primary issue of contention in the Objections and Responses filed by the Parties, however, is the scope of this writ. Specifically, the Parties disagree as to whether intangible property in the form of checking accounts are subject to possession via a writ of replevin. The well settled case law holds that they are not.

■■■ Under Florida law, replevin lies for any wrongful taking or wrongful detention of any specific personal property. Fla. Stat. § 78.01; *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So.2d 160, 161 n. 1 (Fla. 5th DCA 1986). Because replevin involves recovery of the personalty itself, the personal property subject to recovery via replevin has always been restricted to the recovery of tangible personalty capable of specific identification and manual seizure. *Williams*, 489 So.2d at 162. Similarly, replevin is inappropriate and unavailable when the personalty sought to be recovered is, as a practical matter, incapable of being specifically described by the party moving for the writ, and located, identified, and seized by the marshal executing the writ. *See id.* at 163.

Thus, the Fifth District Court of Appeal of Florida in *Williams* held that the action of replevin was not available to recover a sum of money claimed by the plaintiff and possessed by the plaintiff only in the form of funds on deposit in the defendant's bank checking account. 489 So.2d at 168. The *Williams* court reasoned that any "monies" or "funds" contained in such bank accounts could not be brought within the tactile grasp of an officer executing a writ of replevin. *Id.* at 167. The *Williams* court further held that replevin could lie to recover a check or passbook only where the issue was who was entitled to possess that physical object, not when the issue was the ownership of the intangible right that was represented by the tangible evidence. *Id.* at 163–64.

■■ The Court agrees with this reasoning and finds no authority upon which it could rely to allow Defendant Zokaites to subject Plaintiffs' bank accounts and accounts receivable to the writ. Moreover, the Court finds that neither is Defendant entitled to recover Plaintiffs' checkbooks, as the issue in this case is the intangible debt represented by the checkbooks, rather than possession of the checkbooks themselves. The same can be said for all accounts receivable invoices and reports, as requested by Defendant. On the other hand, any cash on hand, such as currency (coined metal and paper bank notes) or account debtors' checks, may be replevied because it is tangible and subject to specific identification. *Williams*, 489 So.2d at 165; *see also Whitman v. Kovacs*, 89 N.Y.S.2d 21, 22 (N.Y.Sup.Ct.1949).

■■ The Court finds the remainder of Plaintiff's arguments in its Limited Objection to be without merit. Plaintiff's equitable arguments to the effect that Defendant is barred from relief due to unclean hands were thoroughly considered and rejected by the Magistrate Judge. As Judge Tor-

res noted, appropriately, the only defense to a statutory right of replevin is one that can defeat the creditor's right to immediate possession. *E.g., Prestige Rent–A–Car, Inc. v. Advantage Car Rental & Sales, Inc.,* 656 So.2d 541, 545 (Fla. 5th DCA 1995). The Court may not even consider any other defenses, as the issuance of a writ of replevin is not a matter of equitable discretion, it is a matter of statutory right. *See Comcoa, Inc. v. Coe,* 587 So.2d 474, 477–79 (Fla. 3d DCA 1991). Plaintiff's final argument, that the Court is enjoined from enforcing any rights derived from the loan agreements because Defendant failed to pay the documentary stamp taxes on the security agreement pursuant to Florida law, is now moot. As previously noted, on September 26, 2006, the Court issued an Order Granting Defendant's Motion to Dismiss (D.E.71) and dismissing Plaintiffs' Amended Complaint, wherein the Court found that Pennsylvania substantive law would govern the loan agreements at issue. (*Id.* at 17.) Defendant is thus correct that Florida documentary stamps are not applicable to the agreements at issue, and thus irrelevant to the instant case.

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. The Report and Recommendation That Defendant's Motion for Temporary Restraining Order or Replevin of Secured Collateral Be Denied in Part and Granted in Part (D.E.67), issued September 13, 2006 by Magistrate Judge Edwin G. Torres is **ADOPTED consistent with this Order.**

2. Defendant Frank Zokaites is entitled to immediate possession of (i) all merchandise, inventory and goods and all additions, substitutions and replacements thereof, wherever located, together with all goods, supplies, incidentals, packaging materials, labels, any other items used or usable in manufacturing, processing, packaging or shipping same, in all stages of production, and all products and proceeds of whatever sort, including cash on hand in the form of coined metal, paper bank notes, and account debtors' checks, and excluding all intangible proceeds, such as bank accounts and accounts receivable, and its evidence, such as checkbooks and accounts receivable invoices and reports, now or hereafter owned by Debtor; and (ii) all machinery and equipment, now or hereafter owned by Debtor, including, but not limited to, all machinery, equipment, furnishings, movable trade fixtures and vehicles and all additions, substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, spare and replacement parts, related computer software, maintenance and repair supplies and manuals, instructional manuals, warranties, and equipment and accessories installed thereon or affixed thereto. Zokaites, therefore, is entitled to replevin the tangible collateral described in "Exhibit A" of the Funding and Security Agreement.

3. The Clerk of the Court shall issue a Writ of Replevin (in the form proposed and attached hereto) directing the repossession of the collateral and its delivery to Zokaites.

4. In order to proceed with the replevin of the collateral, the Court directs Land–Cellular Corp. to forthwith maintain the collateral in Miami–Dade County, Florida, and cooperate in the transfer of possession of the collateral to Defendant Frank Zokaites. For that purpose, Land–Cellular Corp. shall identify **within three (3) days of the Court's Order** the location of all property identified in the Writ of Replevin.

5. Land–Cellular may file with the Court a written undertaking executed by a surety approved by the Court in an

amount equal to the value of the property to stay the effect of the replevin, but initially not less than $250,000.

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING ORDER OR REPLEVIN OF SECURED COLLATERAL BE DENIED IN PART AND GRANTED IN PART

TORRES, United States Magistrate Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Temporary Restraining Order or, in the Alternative, Motion for the Replevin of Secured Collateral [D.E. 26], filed March 20, 2006. A lengthy hearing was held on the above motion on August 25, 2006. The Court has considered the papers filed in the case and argument of counsel. For the reasons discussed below, this Court recommends that Defendant's Motion be denied in part and granted in part.

### I. BACKGROUND

This action arises from a loan made by Defendant Frank Zokaites ("Zokaites") to Plaintiff Land–Cellular Corporation ("Land–Cellular") in March of 2005 which, according to Zokaites, Land–Cellular failed to repay according to the their agreement. Land–Cellular preemptively filed suit against Zokaites in this action on the grounds that the loan, and previous loans made by Zokaites to Land–Cellular, violated Florida's usury laws and were therefore unenforceable. Zokaites moves this Court to enter a temporary restraining order (in actuality a preliminary injunction) against Land–Cellular to prevent Land–Cellular from depleting its assets such that Zokaites will be able to receive payment for his loan.

Land–Cellular is a closely held Florida corporation located in Pembroke Pines, Florida. Defendant Robert Moses ("Moses") is the principal shareholder in the corporation, and one of five directors. Zokaites is a stockholder, director, and creditor of Land–Cellular, who became a stockholder through a subscription agreement by which he loaned money to Land–Cellular in exchange for shares in the corporation. Zokaites currently owns 18.5% of Land–Cellular shares.

Zokaites loaned money to Land–Cellular on several occasions in the past; each of the previous loans were repaid in full, in accordance with the terms of the loan agreements. On March 28, 2005, Zokaites made a fifth loan to Land–Cellular, in the amount of $200,000.00. This loan was secured by a first lien on all of Land–Cellular's assets, including its inventory, machinery, equipment, furnishings, vehicles, accounts receivable, and all proceeds generated from these assets. The agreement provided that should Land–Cellular default on its repayment obligations, it was required to assemble its assets and deliver those assets to Zokaites.

The loan came due on September 30, 2005, at which time Land–Cellular was required to pay in full the principal and interest, but Land–Cellular did not make payment in full. Although the parties then apparently tried to negotiate repayment terms, they were unable to come to an agreement. Land–Cellular made additional interest payments during that time but all payments ended in December 2005. No further payment of principal or interest has been made.

Land–Cellular filed a preemptive strike against Zokaites by filing this pending lawsuit against Zokaites on December 8, 2005, in the Southern District of Florida alleging primarily that Zokaites's loan violated Florida's usury laws and should be declared unenforceable. After further unsuccessful attempts at negotiation, Zo-

kaites then filed suit against Land–Cellular for repayment of the loan in the Court of Common Please of Allegheny County, Pennsylvania, which was subsequently removed by Land–Cellular to the District Court for the Western District of Pennsylvania. Zokaites also filed there an emergency motion for a temporary restraining order against Land–Cellular, alleging that Land–Cellular was diverting assets from the corporation, thereby putting Zokaites's secured loan at risk.

The Pennsylvania District Court ultimately denied Zokaites's motion, and transferred his complaint to the Southern District of Florida for consolidation with the instant case. The court found that Zokaites had failed to present any evidence to meet his burden on any of the factors necessary for a temporary restraining order, and that the Southern District of Florida was the proper venue for the case. After transfer and consolidation, Zokaites filed the pending motion for temporary restraining order against Land–Cellular seeking, in essence, to enforce the loan agreement's provision that Land–Cellular assemble and deliver its assets to Zokaites. Zokaites alternatively requested a writ of replevin be issued under Florida law to take possession of Land–Cellular's inventory and property used to collateralize the loan.

## II. ANALYSIS

### A. Motion for Temporary Restraining Order

■ A temporary restraining order is an appropriate remedy in a situation where a party is facing immediate irreparable harm which will likely occur before a hearing for preliminary injunction can be held. Fed.R.Civ.P. 65; 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2951 (2d ed.1995). Given the nature of the relief sought by Zokaites, a motion for temporary restraining order is

an inappropriate vehicle to achieve that relief for several reasons.

First, Zokaites requests that this Court order Land–Cellular to assemble and deliver its assets to Zokaites. This relief cannot be accomplished via a temporary restraining order when notice has been provided to the opposing party and no showing is made that injunctive relief without notice is required under the circumstances. Courts may, however, treat a motion for temporary restraining order as a motion for preliminary injunction once notice is provided and an evidentiary hearing held on the motion, as was done in this case. This Court will therefore construe Zokaites's motion as a motion for injunctive relief under Fed.R.Civ.P. 65(a) to enforce the provisions of the loan agreement.

■ In a request for injunctive relief, the moving party must meet four well-understood requirements:

(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–1226 (11th Cir.2005). This Court will address each factor in turn.

In *Schiavo*, the Eleventh Circuit stated that "[c]ontrolling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Id.* at 1226 (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 339, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) ("Plaintiffs with questionable claims would not meet the likelihood of success criterion.")).

■ In his initial motion, Zokaites did not even address the question of whether he would ultimately prevail on the merits. He merely claimed that the loan agreement entitles him to assemble the collateral which secures his loan, and that "[t]he issuance of a TRO (absent a replevin) is the best remedy." [D.E. No. 26 at 8]. In his reply, Zokaites does address, in great detail, his likelihood of success on the merits. He states, however, that "[t]he only portion of Plaintiffs' Response that is relevant is the discussion of whether Zokaites will prevail on the merits of the case." (D.E. No. 36 at 5). Zokaites is mistaken to the extent he is suggesting that Land–Cellular has the burden to show that Zokaites will not satisfy this first requirement. "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites. The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990), *rev'd on other grounds*, 508 U.S. 656, 660, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Unless Zokaites meets all of the necessary requirements, he is not entitled to injunctive relief. Because, as discussed below, none of the other requirements have been met, this Court need not engage in an analysis of the merits of Zokaites's claim against Land–Cellular at this juncture.

■ As the court noted in the Pennsylvania action, "[a] clear showing of an imminent irreparable injury is an absolute necessity." *Zokaites v. Land–Cellular Corp.*, 424 F.Supp.2d 824, 832 (W.D.Penn. 2006). Establishing a risk of future irreparable harm is not enough; rather the movant must make a showing of *immediate* irreparable injury. *Id.* at 832; *see, e.g., Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir.2005). Moreover, the potential injury must be of a nature so as to be irreparable, meaning that money cannot make the moving party whole. *See Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed.Appx. 180, 190 (11th Cir.2005); *Pirtek USA, LLC v. Wilcox*, 2006 U.S. Dist. LEXIS 41569 (D.Fla.2006).

■ Here, Zokaites seeks injunctive relief to force Land–Cellular to assemble and deliver its assets in accordance with the terms of the loan agreement, so that Zokaites will not lose the monies owed him. Simply put, Zokaites wants to ensure that he will be repaid for the loan he made to Land–Cellular. The relief sought is not of the unique nature to invoke the extraordinary remedy of injunctive relief. To borrow again from the well reasoned decision in the Pennsylvania action, "[t]he feared injury of losing the ability to collect on a debt is simply not a form of irreparable injury warranting injunctive relief." *Zokaites*, 424 F.Supp.2d at 832. Moreover, Zokaites has not shown that there is any immediate need for the assets to be assembled and delivered. He does not, in the pending motion, allege that the assets are being depleted; he simply wants them collected in accordance with the terms of the agreement. Again, the relief Zokaites is seeking is not the type to warrant an injunction (in contrast to the alternative relief he seeks by way of writ of replevin, discussed *infra*).

Zokaites similarly fails to establish the third and fourth prongs necessary for injunctive relief: that the harm to the movant would be greater than that suffered by the non-movant, and that the relief sought would serve the public interest. While suffering a financial loss would injure Zokaites, the injury to Land–Cellular resulting from the requested relief would be far greater. Were this Court to order that Land–Cellular's assets be assembled and

turned over to Zokaites, the corporation would almost surely go out of business, harming the corporation itself, as well as its other shareholders and creditors. An injunctive order under these circumstances may not be possible absent an extraordinary showing that has not been made here.[1]

Finally, the Pennsylvania court considered Zokaites's request for preliminary injunctive relief, even to the point of convening an evidentiary hearing for that purpose. The court denied the motion based upon a failure to satisfy the irreparable harm component required for such relief. Zokaites does not convincingly show why this finding should be disturbed or why that finding was erroneous. In any event, as discussed above, this Court need not determine the strength of Zokaites's claims against Land–Cellular at this time on this renewed motion for injunctive relief, as Zokaites has failed to carry his burden as to the second, third, and fourth elements for injunctive relief. Consequently, his motion for temporary restraining order, construed as a motion for injunctive relief, should be denied.

### B. Motion for Replevin

In the alternative to his motion for temporary restraining order, Zokaites seeks a writ of replevin to seize the assets that collateralized his loan to Land–Cellular, pursuant to Florida Statutes, Chapter 78. Florida's replevin statute provides two distinct procedures under which replevin may be sought. *JB Int'l, Inc. v. Mega Flight, Inc.*, 840 So.2d 1147, 1148 (Fla. 5th DCA 2003). The pre-judgment writ of replevin, which is codified at Fla. Stat. § 78.068(2), is a summary procedure that allows the movant to obtain possession of property on an ex parte application to the court. *Id.* at 1149. Under this statutory provision, the movant must show that the claimed property is "in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action." This provision has not been invoked by Zokaites in his pending motion. He has not attempted to show that the property is in immediate danger of destruction or waste, nor did he ever file the ex parte application the statute contemplates.

Zokaites rather pursues replevin under the second procedure provided in the statute, via section 78.067(2), which allows a petitioner to obtain possession of property during the pendency of litigation upon a showing that petitioner's underlying claim is likely to succeed. Under this provision, the respondent is entitled to a hearing during which the court must consider the affidavits and other showings made by the parties. Fla. Stat. § 78.067(2). Only after that hearing is held, and if the Court makes a determination that the moving party, "with reasonable probability, is enti-

---

1. Zokaites relies heavily on the one case which he claims supports his position that an injunction is an appropriate remedy for his claim against Land–Cellular: *Clark Equipment Co. v. Armstrong Equipment Co.*, 431 F.2d 54 (5th Cir.1970). In *Clark*, the court affirmed the district court's order that a debtor assemble and deliver its assets to a secured creditor in accordance with the UCC and the parties' loan agreement. Zokaites argues that the case is on all fours with the instant case, but *Clark* is inapposite. *Clark* dealt with neither a temporary restraining order nor a pre-liminary injunction. In *Clark*, the court granted permanent injunctive relief after having decided the merits of the plaintiff's claim against the defendant. By suggesting that he is entitled to comparable relief, it appears that Zokaites is requesting that this Court grant permanent injunctive relief in the form of the assembly and delivery of all of Land–Cellular's assets to Zokaites prior to the Court making a determination on the merits of either parties' claims against each other. Zokaites's position is supported by *Clark Equipment*.

tled to the possession of the claimed property pending final adjudication of the claims of the parties," then a writ of replevin may be issued under the statute that authorizes the seizure of that property pending the final adjudication of the dispute. As the statute further explains, "[t]his determination shall be based on a finding as to the probable validity of the underlying claim alleged against the defendant." *Id.*

As more fully explained below, the Court finds that Zokaites is entitled to possess the collateral for his security interest given the uncontroverted fact that Land–Cellular has defaulted on the loan and the probability that Zokaites will obtain a judgment against defendant on this claim notwithstanding the defenses that Land–Cellular may raise.

The necessary prerequisite for this finding is based upon the August 25, 2006, evidentiary hearing held before the Court at which the parties introduced the testimony of Zokaites and Robert Moses, Land–Cellular's President and majority shareholder. Zokaites testified that he made several different loans to Land–Cellular, ranging in amount from $50,000 to $250,000. Moses testified that over time Zokaites had been Land–Cellular's largest individual lender, having loaned Land–Cellular approximately $750,000 in total. Zokaites testified that both he and Moses signed the Funding and Security Agreement that set forth the terms of Zokaites' last loan to Land–Cellular, which is attached as "Exhibit A" to the Complaint filed in this case. [D.E. 1.] A copy of the Funding and Security Agreement was also admitted into evidence at the hearing. [Pet'r Ex. 1.] Both Zokaites and Moses testified that Land–Cellular's last payment on the loan was made in December 2005 and that it was an interest-only payment. They also testified that under the Funding and Security Agreement the principal amount, plus all interest thereon, was supposed to have been paid by September 30, 2005, and that Land–Cellular failed to make payment by that date, thereby defaulting on the loan.

Paragraph 2 of the agreement grants Zokaites a security interest in the company's "Primary Collateral," which is defined in detail in "Exhibit A" of the agreement. [D.E. 1; Pet'r Ex. 1.] The "Primary Collateral" includes the company's inventory, machinery and equipment. Zokaites duly recorded a financing statement evidencing his security interest in Land–Cellular's assets. [D.E. 26, Ex. B.] This financing statement was also admitted into evidence at the hearing. [Pet'r Ex.2.]

At the hearing, there was conflicting testimony regarding the filing of a UCC–3 releasing the security interest. Moses testified that a Satisfaction of Mortgage, which Zokaites executed on February 26, 2004, released the UCC financing statement that secured the loan on which Land–Cellular defaulted. He also testified that the current loan was funded without a personal guaranty. Zokaites testified that the Satisfaction of Mortgage he executed released a prior UCC financing statement that recorded his security interest in Moses' residence under a previous loan—the first loan Zokaites ever made to Land–Cellular. The Court finds Zokaites's testimony fully credible on this issue. The fact is that the current loan was not personally guaranteed by a security interest in Moses' residence and the Funding and Security Agreement governing the loan was entered into by the parties on March 28, 2005, over one year after Zokaites signed the Satisfaction of Mortgage.

Land–Cellular also introduced a UCC–3 releasing the Primary Collateral described in "Exhibit A" to the Funding and Security Agreement, which was signed by Zokaites, as evidence that Zo-

kaites had released his security interest in Land–Cellular's assets. [Pet'r Ex. 3.] Zokaites countered that he signed the UCC–3 after Land–Cellular paid another previous loan. Zokaites further testified that he entered into the current Funding and Security Agreement less than one month after he signed the UCC–3 with the understanding that Land–Cellular would not record the UCC–3, so that his security interest would remain in effect under paragraph G of the agreement.

Paragraph G of the agreement reads as follows: "The prior UCC filing in favor of the Secured Party will remain in full force and effect for the benefit of securing the Funds for Secured Party under this Agreement." [D.E. 1, Ex. A; Pet'r Ex. 1.] Land–Cellular honored that agreement until the commencement of the current action. At the hearing, Moses admitted that he did not record the UCC–3 until after litigation in Florida had commenced. Shortly after Zokaites learned that the UCC–3 had been recorded, he filed another UCC financing statement on June 9, 2006. [Pet'r Ex. 4.] Accordingly, the Court finds that Zokaites has a duly recorded security interest in Land–Cellular's assets as described in "Exhibit A" to the Funding and Security Agreement. And regardless of the status of the recording of the financing statements for purposes of providing notice to third parties, there is no question that the security interest in this Agreement is fully binding and enforceable as between the parties to the Agreement, Land–Cellular and Zokaites.

As stated earlier, the Court must "make a determination of which party, with reasonable probability, is entitled to the possession of the claimed property pending final adjudication of the claims of the parties." Fla. Stat. § 78.067(2). The Court finds that Zokaites is entitled to possess the collateral for his security interest given that Land–Cellular has defaulted on the loan. A sufficient and substantial showing has been made that a writ of replevin should issue under Florida law.

The primary defense that Land–Cellular relies upon here, which mirrors the underlying claim it filed against Zokaites in this action initially, centers on the allegation that the Funding and Security Agreement executed by the parties violates Florida's usury laws because it charges more than eighteen percent interest on a loan that is less than five hundred thousand dollars. The Court finds, with reasonable probability, that Land–Cellular will not be successful in this defense and its claim. The Funding and Security Agreement contains a choice of law provision expressly stating that the agreement shall be construed in accordance with and governed by the laws of the State of Pennsylvania. "In deciding what law is to be applied, the forum court applies its own choice of law rule respecting the validity and interpretation of the contract." *OFS Equities, Inc. v. Conde,* 421 So.2d 651, 653 (Fla. 3d DCA 1982) (citing *Jemco, Inc. v. United Parcel Service, Inc.,* 400 So.2d 499 (Fla. 3d DCA 1981)). Florida courts must uphold an otherwise usurious agreement "by applying foreign law if the foreign jurisdiction has a normal relation to the transaction and would also favor the agreement." *Continental Mortgage Investors v. Sailboat Key, Inc.,* 395 So.2d 507, 512 (Fla. 1981). The parties do not dispute that in Pennsylvania the state's usury law does *not* apply to a commercial loan or loans exceeding $50,000. *See* 41 Pa. Cons.Stat. Ann. §§ 201 and 301. As such, Zokaites's last loan to Land–Cellular is not usurious under Pennsylvania law, and Land–Cellular does not contend otherwise.

Land–Cellular argues instead that the choice of law provision in the agreement is not controlling, and should not be enforced, because Pennsylvania does not

have a normal relation to the transaction as Zokaites's residence is the only connection to Pennsylvania. The Court finds, however, that the transaction has a normal relation to Pennsylvania. Not only is Zokaites' residence in Pennsylvania, but Zokaites testified that his office is in Pennsylvania and that he conducts business from there. Furthermore, the funds were originally disbursed from that state. Although the agreement does not specify where payment is to be made, there is a presumption under Florida law that payment is made where the creditor is domiciled. *Venetian Salami Co. v. J.S. Parthenais,* 554 So.2d 499, 502 (Fla.1989) (citing *Madax Int'l Corp. v. Delcher Intercontinental Moving Services, Inc.,* 342 So.2d 1082 (Fla. 2d DCA 1977)). Therefore, there is a presumption that the loan was also made payable in Pennsylvania. No evidence was introduced at the hearing to rebut this presumption.

Moreover, Florida courts have upheld time and again usurious contracts with choice of law provisions that provide for the application of foreign law to the agreement on substantially similar facts as the ones in the instant case. *E.g., Continental Mortgage Investors v. Sailboat Key, Inc.,* 395 So.2d at 512–513; *OFS Equities, Inc. v. Conde,* 421 So.2d at 653. This is required because, as the Florida Supreme Court very clearly stated, "in a usury case that involves a conflicts questions, we do not count the number of contacts with each state ...." *Continental Mortgage Investors v. Sailboat Key, Inc.,* 395 So.2d at 513. Therefore, Land–Cellular's argument, that the loan is primarily a Florida transaction and hence requires the application of Florida usury law, must fail.

Florida law also recognizes the importance of protecting the justified expectations of parties to a contract. In *Continental Mortgage Investors,* the Court also reiterated this principle and stated:

Subject only to rare exceptions, the parties will expect on entering a contract that the provisions of the contract will be binding upon them .... Usury is a field where this policy of validation is particularly apparent .... [T]he courts deem it more important to sustain the validity of a contract, and thus to protect the expectations of the parties, than to apply the usury law of any particular state.

395 So.2d at 511 (citing Restatement (Second) of Conflict of Laws § 203 cmt. b (1971)). The Court further reasoned: "Commercial stability in interstate trade depends on predictability and some degree of uniformity among the states in their willingness to honor commercial agreements." *Id.*

Here, Land–Cellular has not introduced persuasive evidence that its case against Zokaites fits one of the rare exceptions to the rule announced in *Continental Mortgage Investors.* It suggests, for instance, that the Florida Supreme Court in *Continental Mortgage Investors* adopted the Restatement (Second) modified traditional rule, which requires that the interest rate not be greatly in excess of the rate permitted in the forum state. [D.E. 62 at 3.] Yet *Continental Mortgage Investors* clearly does not adopt the modified traditional rule, but rather adopts the traditional rule, which only requires that the transaction have a normal relation to the foreign jurisdiction and that the foreign jurisdiction favor the agreement. 395 So.2d at 512 ("... this Court will follow under the circumstances of this case the traditional rule ....").

As a result, Land–Cellular's primary defense to the motion for replevin, the agreement's unenforceability under Florida usury law, will likely prove to be unsuccessful. Additionally, the remaining arguments Land–Cellular makes against the issuance

of a writ of replevin are simply not tenable under Florida law, which this Court sitting in diversity must apply. Land–Cellular argues that equitable principles should govern and prevent Zokaites from invoking this statutory remedy based on the unfairness that would befall Land–Cellular from issuance of the writ. In plain terms, Land–Cellular claims that it will be shut down and prevented from engaging in further business if the writ is issued, something that the Court should not allow under its equitable powers, and especially based on the fact that Zokaites would be breaching his fiduciary duties to the corporation by pursuing this relief.

Land–Cellular forgets, however, that the only defense to a statutory right of replevin is one that can defeat the creditor's right to immediate possession. *E.g., Prestige Rent–A–Car, Inc. v. Advantage Car Rental & Sales, Inc.,* 656 So.2d 541, 545 (Fla. 5th DCA 1995) (citing *Morse Operations, Inc. v. Superior Rent–A–Car,* 593 So.2d 1079 (Fla. 5th DCA 1992)). Other than this specific defense, a court does not have equitable discretion to deny a replevin remedy under Florida law simply because of the unfairness to the debtor. It is well settled in Florida that the replevin provisions of Chapter 78, Fla. Stat., are statutory in nature and provide an entitlement to a moving party to such relief when the statutory showing has been made. *Comcoa, Inc. v. Coe,* 587 So.2d 474, 477–79 (Fla. 3d DCA 1991) (ordering that writ of mandamus issue to direct lower court judge to issue a writ of replevin where statutory showing had been satisfied). As Judge Schwartz explained in *Comcoa,* the issuance of a writ of replevin is not a matter of equitable discretion; it is a matter of statutory right. "Since, then, there is no basis for an exercise of discretion to deny the writ, there can be no ability to deny it at all." *Id.* at 479.

The remaining defenses that Land–Cellular has raised here are all equity-based arguments that the writ should not issue for on reason or another, such as Zokaites's contrary duties to the corporation, the balance of harms that cuts in Land–Cellular's favor, the fact that Zokaites has plenty of money and can afford to wait for a money judgment, or that the company is about to be sold and a writ of replevin would jeopardize that sale. These are not, however, defenses to Zokaites's right to immediate possession. There is no dispute that a security agreement was entered into and that the current debt remains unpaid. Under that agreement, Zokaites has the right to pursue a remedy of repossession. Whether this Court would suggest a different approach as a matter of fairness is irrelevant. The Court has no choice but to enforce the statute and issue the writ of replevin for the tangible property covered in the parties' security agreement. *E.g., Prestige,* 656 So.2d at 545 ("Under the lease agreement, Advantage was entitled to possession of the vehicles upon default. Prestige admitted that it had failed to make the required payments under the lease. Prestige, however, claimed that it was justified in doing so because Advantage had failed to provide the required registration tags. Prestige also claimed a setoff or credit for transportation expenses. These claims, however, do not allow for Prestige to retain possession of the vehicles nor would they defeat Advantage's right to repossession under the lease agreement. Prestige's recourse is for money damages, not retention of the vehicles.").

Therefore, the Court finds that a writ of replevin should issue as to all tangible property identified in the Security Agreement (as opposed to unidentifiable or intangible property that may be included in that Agreement that cannot be physically repossessed by the Marshal). Alternative-

ly, pursuant to the replevin statute, Land–Cellular may post a bond equaling the total value of the property that may be seized under the writ for a minimum amount of $250,000.[2] Fla. Stat. § 78.067(2) ("the order shall be stayed pending final adjudication of the claims of the parties if the defendant files with the court a written undertaking executed by a surety approved by the court in an amount equal to the value of the property").

Finally, as the statute clearly provides, Zokaites is entitled to immediate possession of the property and must maintain that property in a suitable location that prevents waste or destruction pending final adjudication of the case.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion [D.E.26] be denied in part and granted in part as stated above.[3] The Court further recommends that the Court enter an Order, pursuant to Fla. Stat. § 78.067(2), finding that:

1. Zokaites is entitled to immediate possession of (i) all merchandise, inventory and goods and all additions, substitutions and replacements thereof, wherever located, together will all goods, supplies, incidentals, packaging materials, labels, materials and any other items used or usable in manufacturing, processing, packaging or shipping same, in all stages of production, and all products and proceeds of whatever sort, except intangible proceeds, including specifically all inventory, now or hereafter owned by Debtor; and (ii) all machinery and equipment, now or hereafter owned by Debtor, including, but not limited to, all machinery, equipment, furnishings, movable trade fixtures and vehicles now or hereafter owned by Debtor and all additions, substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, spare and replacement parts, related computer software, maintenance and repair supplies and manuals, instructional manuals, warranties, and equipment and accessories installed thereon or affixed thereto. Zokaites, therefore, is entitled to replevin the tangible collateral described in "Exhibit A" of the Funding and Security Agreement.

2. The Clerk of the Court shall issue a Writ of Replevin (in the form proposed and attached hereto) directing the repossession of the collateral and its delivery to Zokaites.

3. In order to proceed with the replevin of the collateral, the Court directs Land–Cellular to forthwith maintain the

---

**2.** The Court noted at the hearing that this amount was the most that would be required for a bond in this case. The Court now concludes, however, that the statute does not tie the amount of the bond to the amount owed by the debtor, and instead relates the amount of the bond to the total value of any property that may be seized under the Agreement. Therefore, the minimum initial bond must be $250,000, which the Court can later modify if the value of the property here materially exceeds or falls below this amount.

**3.** Pursuant to Local Magistrate Rule 4(b), the parties have five (5) days from the date of this Report and Recommendation (i.e. September 20, 2006) to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Under the circumstances here, the Court finds good cause to shorten the time for any objections prior to a writ of replevin being issued. See S.D. Fla. Local Mag. Rule 4(b). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

collateral in Miami–Dade County, Florida, and cooperate in the transfer of possession of the collateral to Zokaites. For that purpose, Land–Cellular shall identify within three days of the Court's Order the location of all property identified in the Writ of Replevin.

4. Land–Cellular may file with the Court a written undertaking executed by a surety approved by the Court in an amount equal to the value of the property to stay the effect of the replevin, but initially not less than $250,000.

September 13, 2006.